UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GABRIEL PAULINO | Criminal No. 3:16cr172 (JBA)<br><br>October 29, 2021 |

**RULING DENYING DEFENDANT'S MOTION FOR MODIFICATION OF SENTENCE**

Defendant Gabriel Paulino moves for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i) on the grounds that his health conditions and the COVID-19 pandemic pose a severe risk of health-related complications. (Def.'s Mem. of Law in Supp. ("Def.'s Mem.") [Doc. # 54] at 4.) Mr. Paulino argues his medical conditions constitute extraordinary and compelling reasons warranting his release. The Government opposes Mr. Paulino's motion on four grounds: (1) Mr. Paulino has refused the COVID-19 vaccine, (2) Mr. Paulino has already tested positive for COVID-19 and was asymptomatic, (3) Mr. Paulino's health concerns are not extraordinary and compelling circumstances, and (4) the Section 3553(a) factors do not warrant a reduction in his sentence because he is a danger to the community. (Gov't's Resp. to Def.'s Mot. Seeking Compassionate Release ("Gov't's Resp.") [Doc. # 61] at 1-2.) The Court has considered the arguments on both sides, and for the reasons that follow, Mr. Paulino's motion is DENIED.

**I.   Background**

On February 8, 2017, Mr. Paulino pleaded guilty to possession with intent to distribute heroin, in violation of Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and possession of a firearm in furtherance of drug trafficking in violation of Title 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(2). (Gov't's Resp. at 2.) On May 4, 2017, the Court sentenced Mr. Paulino to a total effective sentence of 84 months of imprisonment, the low end of what is advised by the

Sentencing Guidelines. (*Id.*) Since that time, Mr. Paulino has served more than 64 months of his sentence, with a projected release date of June 14, 2022. (Def.'s Mem. at 2.)

Mr. Paulino filed his Motion to Modify Sentence [Doc. # 50] on April 19, 2021, citing concerns that his asthma, high blood pressure, and high cholesterol put him at a greater risk of severe infection from COVID-19. Mr. Paulino is currently held at FCI Schuykill. (Def.'s Suppl. Mem. at 7.) To date, 487 of 1,118 individuals incarcerated at FCI Schuykill have tested positive, but none have died as a result of their symptoms and none are currently infected. *COVID-19*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus (last accessed Oct. 25, 2021). Mr. Paulino tested positive for COVID-19 in February 2021—a result that he claims was a false-positive because he did not experience symptoms. (*See* Def.'s Mem. at 2.) The Government counters that Mr. Paulino's result was not a false positive, but instead he experienced an asymptomatic response to his infection. (*See* Gov't's Mem. at 20.)

The Court assumes the parties' familiarity with the ongoing COVID-19 pandemic and its spread from person-to-person, especially between those who are in close contact with one another. *How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads. html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov% 2Fprepare%2Ftransmission.html (last accessed Oct. 25, 2021). The Centers for Disease Control and Prevention ("CDC") reports that hypertension and asthma are two conditions that can lead to more severe illness in those infected by COVID-19. *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www. cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions. html (last accessed Oct. 25, 2021). The CDC also states that "COVID-19 vaccines approved or authorized in the United States are highly effective at preventing severe disease and death, including against the Delta variant." *Delta Variant: What We Know About the Science*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-

ncov/variants/delta-variant.html?s_cid=11504:covid%20delta%20variant%20vaccine%20efficacy:sem.ga:p:RG:GM:gen:PTN:FY2 (last accessed Oct. 6, 2021).

It is undisputed that Mr. Paulino has exhausted his administrative remedies. (*See* Gov't's Mem. at 7-8.)

## II. Discussion

### A. Legal Standard

Under Title 18 of the United States Code § 3582(c)(1)(A):

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Although incarcerated individuals previously could seek compassionate release only from the BOP, the First Step Act of 2018 permits federal prisoners to seek relief from the federal courts upon exhaustion of administrative rights. *See* 18 U.S.C. § 3582(c)(1)(A). In "shift[ing] discretion from the [BOP] to the courts," the First Step Act paved the way for "the release of thousands of imprisoned people who[] did not need to be incarcerated" by "giving discretion to an appropriate decisionmaker," instead of "mandating more lenient outcomes." *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). By empowering district courts to reduce sentences and release incarcerated people, Congress intended to expand, expedite, and improve the process of compassionate release. *Id.* at 235. While a district court's discretion to grant compassionate release motions is extensive, a court cannot find extraordinary and compelling circumstances based on "rehabilitation *alone.*" *Brooker*, 976 F.3d at 237-38.

### B. Extraordinary and Compelling Circumstances

Mr. Paulino argues that the combination of his asthma, high blood pressure, high cholesterol, and the threat posed by COVID-19 constitutes an extraordinary and compelling circumstance. (Def.'s Mem. at 2.) The Government contends that because Mr. Paulino refused the opportunity to become vaccinated and did not suffer symptoms when he tested positive for COVID-19, his medical conditions do not rise to the level of extraordinary and compelling. (Gov't's Resp. at 1-2.)

"The opportunity for individually-identifiable inmates to opt to receive the COVID-19 vaccine represents a sea change from their previous COVID-19 infection vulnerability and inability to protect themselves against the virus, even with comorbidities." *United States v. Poupart*, No. 3:11cr116 (JBA), 2021 WL 917067, at *1 (D. Conn. Mar. 10, 2021). In light of this "sea change," refusing the COVID-19 vaccine undermines an incarcerated person's claim of medical vulnerability in prison, though it is not an "automatic, disqualifying factor." *See United States v. Lum*, No. 18-cr-00073-DKW-1, 2021 WL 358373, at *5 n.19 (D. Haw. Feb. 2, 2021) (rejecting the government's claim that an incarcerated person must accept the vaccine to present a viable motion for compassionate release). But when an incarcerated person has refused the COVID-19 vaccine, courts "have nearly uniformly denied compassionate release sought for medical reasons." *United States v. Robinson*, No. 17 Cr. 611-7 (AT), 2021 WL 1565663, at *3 (S.D.N.Y. Apr. 21, 2021) (collecting cases). Further, in determining whether there are extraordinary and compelling reasons for compassionate release, courts consider the ability of an institution to manage the spread of the virus. *See United States v. Feliciano*, No. 3:18-cr-287 (SRU), 2020 WL 5594121, at *6 (D. Conn. Sept. 17, 2020) (collecting cases).

Mr. Paulino's circumstances do not support a modification of his sentence. Although, asthma and hypertension are serious medical conditions that pose a threat of a severe COVID-19 infection, Mr. Paulino appeared to be asymptomatic when he tested positive for COVID-19. Additionally, FCI Skuykill has no current COVID-19 infections among its

4

population and has not suffered any deaths due to COVID-19. Finally, the Court finds Mr. Paulino's refusal to vaccinate to protect himself and others highly unfavorable to his claim that a modification of his sentence is necessary for his safety in prison. These considerations inform the Court's finding that Mr. Paulino has not presented extraordinary and compelling reasons warranting a modification of his sentence.

### C. Section 3553(a) Factors

The Government argues that, even if Mr. Paulino has presented extraordinary and compelling reasons for a reduction in his sentence, his sentence should not be modified because he still presents a threat to the community. (Gov't's Resp. at 34.) Defendant disagrees, arguing that he has served most of his sentence, has been a productive member of the prison, has not been disciplined since March 2020, and has offered a re-entry plan with his sister. (Def.'s Mem. 10-12.) These circumstances, Mr. Paulino argues, will not undermine the purpose of his original sentence.

Under 18 U.S.C. § 3553(a), the Court seeks to impose a sentence that is "sufficient, but not greater than necessary" to:

> reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.* The Court must also determine if Defendant is a "danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13; *see also* 18 U.S.C. § 3582(c)(1)(A).

While Mr. Paulino's sister is to be commended for her willingness to take him in and help him re-enter society, the Court finds that the § 3553(a) factors weigh against modification of his sentence. When sentencing Mr. Paulino, the Court found that his numerous previous felony convictions and the offense for which he currently is incarcerated reflected a pattern of continuous criminal behavior and posed a serious threat to the

5

community. (*See* Sentencing Tr., Gov't Ex. B [Doc. # 61-2] at 54.) Mr. Paulino's crimes against his community required him to undergo significant change which the Court does not find a basis for concluding has been substantially completed, even after considering Mr. Paulino's stated intentions. (*See* Letter re Motion to Reduce Sentence - First Step Act [Doc. # 65].) Of particular concern are Mr. Paulino's three disciplinary infractions while incarcerated at FCI Schuykill. Although his latest infraction occurred more than a year ago, Mr. Paulino was disciplined for possessing narcotics—activity for which he was sentenced. (*See* Inmate Discipline Data, Gov't Ex. C [Doc. # 61-3] at 2.) Mr. Paulino's conduct while incarcerated does not engender confidence in his readiness to re-enter society. As such, the Court is not satisfied that the purposes for which his sentence was imposed will not be undermined by a modification of Mr. Paulino's sentence.

### III.  Conclusion

Having considered Mr. Paulino's medical conditions, refusal to become vaccinated, the conditions inside FCI Schuykill, and the factors set forth in 18 U.S.C. § 3553(a), the Court determines that they weigh against his sentence modification. Therefore, Defendant's Motion for Sentence Modification under First Step Act [Doc. # 50] is DENIED.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of October 2021.